Our next case is number 20-14181 Guzman v. Secretary, Department of Corrections Ms. Montero? Good morning, Your Honors. May it please the court, Courtney Montero on behalf of the appellant Pablo Guzman. It's the appellant's position that the district court read Lockhart v. Fretwell too broadly, and there are important distinctions from the facts of this case. In Lockhart, you have the ineffective assistance of trial counsel and a standard that but for the ineffective assistance, the result of the trial would have been different. In this case, you have ineffective assistance of appellate counsel, and the courts have held the only question under the prejudice prong of the Strickland test is whether there was a reasonable probability that the appellate court, having been informed of the trial court's error, would have granted the appellant a new trial. In Lockhart? Can I ask you a quick question? I guess I thought that sort of the gloss that Fretwell brought to prejudice was to say it's not just about outcome determinativeness, if that's even a word, but fundamental fairness. And the reason that Fretwell says we look at the law sort of like time now instead of time then is because you can't have been deprived of fundamental fairness if it turns out the law didn't entitle you to the relief you're seeking. Lockhart does focus on fundamental fairness, and talking about fundamental fairness with the respects of this particular case, Mr. Guzman, two months after his direct appeal, his conviction was affirmed on direct appeal, that's when he starts filing these motions for ineffective assistance of appellate counsel, trying to alert people desperately, pro se, of what his appellate counsel failed to do. All on his own, without the assistance of counsel, he does this for years, in multiple motions, before multiple courts. And if we want to talk about fundamental fairness in this case, it would be completely unfair, entirely unfair, for the court to rule against Mr. Guzman and try to determine that this would be a fair outcome. He did everything that he could to try to bring this to the court's attention. And had the state court, under AEDPA, the court is required to look at the state court's determination. It changed the standard from Lockhart v. Fretwell. Lockhart predates AEDPA. In AEDPA, you look at what the state court did and the time of the state court's decision. Can I ask you just a quick question about AEDPA? Because I'll have to confess, like, given the text of AEDPA, I'm not sure you're wrong about this, but it's a little hard to imagine that AEDPA liberalized the rules that would sort of entitle habeas petitioners to relief. AEDPA actually tried to limit the entitlement of habeas petitioners to relief. But under the facts of this particular case, like Lockhart was a unique circumstance, this case, too, is a unique circumstance. And the timing here of the change in the law is extremely important. Mr. Guzman was convicted, I think, in 2014. And in 2015, two months after his direct appeal was affirmed, he starts raising this issue. In 2016 is when the third DCA denies his ineffective assistance of counsel claims. And he continues to raise them in the third DCA. And it's again denied in 2019, in January of 2019, as a matter of fact. He filed his habeas petition in federal court here in 2017. Knight wasn't decided over ruling the Lucas case until December of 2019. During the entire course of his state court proceedings, which is what the court is required to look at in AEDPA, the law remained in effect under Lucas. It was a longstanding law. It was in effect for almost 25 years before it was overturned. This wasn't some fleeting law like the law that was at issue in Lockhart v. Fretwell. This was a well-established law that his appellate counsel should have known about. And in the facts of this case, because the law did not change before the habeas petition was filed or even during the course of the state court's habeas petitions, it was changed long after when the case was before the district court in the federal court. And the federal court's job was to look at the state court's proceedings, not conduct a de novo review under Strickland and determine whether counsel was ineffective now. That wasn't the state court. The argument depends on Lucas applying rather than Knight, right? That is correct. So if we determine that Knight, which is a later case, actually controls, then that argument wouldn't lose, right? I'm not sure I understand that last part of your question. I guess it was almost the reverse of the first. So if we decide that Knight controls rather than Lucas, then we should affirm, right? It's our position that it's not for this court to determine whether Knight controls or not. It's to determine whether the state court under AEDPA looked at what the law was in effect at the time of the state court's decision. I don't think anybody can dispute that the Knight case was not in existence at the time the state court made its decision. This court is not conducting a new review under Strickland as to which standard applied. It's looking at the state court's decision. AEDPA in the language says, subsection D1, the Florida court's decision resulted in a decision that was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. And I recently filed a supplement, I think on Sunday, citing the Harrington case, which really gives some clarity to the AEDPA standard and how it should be applied by district courts. And in that case, the court explained that, this is a Supreme Court case, that the Supreme Court held that the pivotal question is whether the state court's application of the Strickland standard was unreasonable. The court explained that this is different from asking whether defense counsel's performance fell below the Strickland standard, as that analysis would be no different than this court adjudicating a Strickland claim on direct review. The state actually cited a case, the Pollini case, which is a Sixth Circuit case. It's not controlling law. But it's the best case that really deals with the change in the law and the interplay between Fretwell and the AEDPA standard. And that case was a Kentucky law that had changed during the course of the collateral attack. And the Kentucky Supreme Court had the option in their case to use the old law or the new law, because the new law was in effect. They could decide whether they wanted to retroactively apply it to the defendant or not. And the district court, in reviewing that, gave deference to the Kentucky Supreme Court's choice to use the new law, which had no longer entitled the defendant to relief. Here, if we give deference to the Florida state court's decision, the court has no choice. There was no option for the state court. Night had not yet been decided. So it's our position that this court cannot look and conduct a comparison as to which one is the right law. It must look to the state court and what information the state court had at the time. So does your position, at the end of the day, does your position, ironically, but maybe not incorrectly, rise or fall on AEDPA? I mean, it seems like you've got sort of two arguments here. One might be, you know, so Fretwell was about trial counsel. This is about appellate counsel. It's just different. But it sounds like I'm not really sure there's a compelling reason that absent AEDPA, in the circumstance of this case, Fretwell would apply differently on trial. The sort of the fundamental fairness gloss of Fretwell would apply differently to appellate counsel than to trial counsel. But instead, you say, we've just got this bizarre set of facts in this case in which even taking account of Fretwell in 2014, if you look at what was happening in the state court in 2014, you've got a blind yourself to Lucas, a knight, sorry, blind yourself to knight, tie yourself to Lucas, and AEDPA says, my guy gets relief. That is one of our main arguments, that the AEDPA, exactly as you said it. In addition, I spent some time trying to distinguish Lockhart v. Fretwell from the facts of this case, one of those terms being the difference between trial counsel and appellate counsel. I've got a laundry list of other reasons why they should be distinguished. In Lockhart, there was a failure to object and preserve an issue for appeal. In this case, it was regardless whether an objection was made by trial counsel, this was a fundamental error standard. I think all courts, all parties agree in this case, had this issue been raised on appeal, he would have been entitled to a new trial without question. And that is a big distinction from Lockhart v. Fretwell. In Lockhart, it was a sentencing issue. It doesn't implicate the right to a fair trial. In this case, we're dealing with a jury instruction and the available defenses which implicates the right to a fair trial. In Lockhart, it's a substantive issue. It's dealing with an aggravating factor at sentencing. And here, it's a procedural error. It's a trial court that made a mistake. In Lockhart, the law was newly established within the same year of the defendant's conviction. And in this case, Lucas was in effect for over 20 years before the direct appeal was decided. In Lockhart, the law was in effect only four years before the court overruled itself. I'm so sorry to interrupt your train of thought, but I just want to make sure that I've got my head squarely around the EDPA piece. So your position isn't that EDPA overrules Fretwell. It's that even taking account of Fretwell, like I'll take Fretwell as I find it, but given the circumstances of this case, Fretwell was on the books, fine. But Knight wasn't. And so we've just got to take the state court record, so to speak, as we find it. Yes, that's exactly right. And the last distinction I would make is Lockhart was pre-EDPA, and this case is post-EDPA, and you must consider it. I'll reserve my remaining time for rebuttal. Thank you. Ms. Rodriguez. Good morning. May I please the court? Magali Rodriguez in behalf of the state of Florida. I would like to start by saying that there is no reason why Fretwell shouldn't apply to ineffective assisting appellate counsel as he does to ineffective assisting the trial counsel. There is nothing in the opinion that says that he shouldn't apply. Fretwell merely overstates the general principle of showing district land prejudice that implicates the fairness and reliability of the trial, of the proceedings. Can I ask you just, and I'm speaking just for myself, I think I basically agree with everything you've said and that you're about to say about the distinction between trial and appellate counsel. Incredibly, though, what about the plain language of EDPA, which does seem to require us to look at what was happening, what the state court did in 2014? Even accounting for Fretwell, how is it that the state court sort of, you know, how do we account for what the state court was doing in 2014? What was the proper application then? I have to say that when it comes to Fretwell and EDPA, Fretwell has nothing to do with EDPA. It was decided before and the rationale of Fretwell was reaffirmed and Williams and Lafley after EDPA. Yeah, so that's why I asked her the last question. Just to be clear, I take it that she's not is a holding? She says, fine. But she just says, like, you know, again, incredibly, the shoes are on the other foot here. She's saying, typically, the petitioners are saying, please do a de novo review. Don't look at this under EDPA. And you're saying, your side is saying, no, no, no, look at this under EDPA, no de novo review. And now today she's saying, look at it under EDPA, right? And because weirdly, EDPA seems to require us to focus our attention on 2014. Not in this specific case. And that's what this court needs to center the analysis. This is an unusual situation. This is not a regular case where you have the law still valid. This is a different, and that is why Fretwell comes into play here. Yes, this case, in 2014, the first petition, state petition in 2015, he filed the federal habeas in 2017. In that process, we have the first report that found that the error was harmless. Then it was reversed for more briefing. We have this petition. During that process, he went back to the state court and filed a second petition in this case. At the same time, filing objections to the first report. Petition is complaining, this is a pro se defendant. He was doing all this over the place. But the bottom line, if he wouldn't have filed a second petition, I would agree that at the time, if the district court would have decided the petition at the time, the claim was meritorious. I think the court recognized, the district court recognized that in his order, in the final order, when he says, yes, it would have been a meritorious claim. But that does not end the analysis in this case, because now we have night. Did night exist at any time during which this case was pending in the state courts, either on direct review or on collateral review? On this court? Yes. I'm sorry, no, no, no. Did night exist at any time in which this case was pending in the state courts, either on direct appeal or post appeal? No, it came after. Then my question is, and I may be missing something really fundamental here, but if Ed Pacez did or did not the state court reasonably apply clearly established federal law when it did its thing, what was the answer to that before night, before night came along? It would have established prejudice. Okay. And we are not disputing that at that time. But what happened is the interplay of farewell when the law changed. I guess my question would be, what we're really looking at here is not did the court apply the law properly as it was in the Florida reporter at that time. The question is, was counsel deficient and did that cause prejudice? And so probably yes, deficient, right? But don't we look, even under EDPA, don't we look at the ineffective assistance of counsel question through the fret well framework, which is you can't prejudice in that one context is not just about getting a different result. It's about whether you experienced unfairness and why, why isn't that why? I guess you would probably say that question remains the same after EDPA because what we're looking at is not the Florida courts application of Lucas versus night. We're looking at whether counsel's admittedly deficient performance led to a result that prejudiced the defendant. Correct. That, that is the case. And if you do that analysis, like you said, we have to, this court needs to look at the prejudice, analyze it based on the fairness and then reliability of the proceeding. And because the right is not recognized anymore on the Florida law because of night and because at the time the federal heaviest petition was still pending in this court. That's the end of inquiry. He cannot establish prejudice on the fret well. It's the same situation, unusual situation before EDPA and after EDPA. And that's all it is regarding fret well. So going back to the, to the fundamental fairness question, is the answer that after night, it was clear that Lucas was a mistake. So he, because the court, the state courts corrected that error. Correct. Okay. The district court recognized that the Florida law was, when it came to jury instructions, it was evolving. They were refining the jury's instruction. We have all this process during this period of time, 20 years from Lucas and then Montgomery, the Florida courts were refining the instruction. We have to take into account that here, it sounds like it's unfair, but this petitioner was litigating all this claim and he decided to go back to the state court, file a second petition. At that time, night was not available, but this court needs to concentrate on the interplay of fret well. This defendant has a right right now. It does not, he cannot establish the prejudice right now because the law, the right that he's claiming right now does not assist anymore under the law. And I think the opinion of fret well finished with a really very good phrase that he says, when the rationale of the law does not assist, the law does not assist anymore. He cannot establish prejudice in this case because he doesn't have a right under the, under current law. And therefore, the proceedings cannot be unfair and the result unreliable. And therefore, we, if the panel does not have any more questions, they say we'd like to rest of the rest of the arguments and ask that this court affirm the district court decision in this case. In their argument, the state basically conceded to my argument. They said that they would agree that if the district court had decided the claim at the time that it was originally filed before the district court in 2017, which is before night, that the claim would have been meritorious. And that's exactly what I'm asking. Here's, here's my question. It's the, it's the same question I gave opposing counsel. So hopefully you had a minute to think about it. Why, when, when we're doing the analysis, we're not, are we looking at whether the court applied the law as it stood at that time? We're looking at whether counsel was provided an effective assistance by verge of not making that was probably deficient. But if you get to the Fretwell look at the overall question of prejudice, it wasn't ultimately an unfair or unjust result. Maybe it was unlucky, right? But under Fretwell, doesn't that IAC analysis remove us from looking at whether the court made the decision under the law at that time correctly? Respectfully, I would disagree. This, the court doesn't get to conduct a new de novo strict list analysis and determine whether prejudice occurred or not under AEDPA. AEDPA requires the court to only look at the state court's decision by its own language. It says whether the Florida court's decision resulted in a decision that was contrary to or an unreasonable application of a clearly established federal law. At the time that the Florida court made its decision, Lucas was still good law and its decision was contrary to Strickland at that point in time. But it's not contrary to, I mean, I don't know if it was contrary to Strickland at that point in time, right? It was contrary to Lucas. But why, I mean, this is an ineffective assistance of counsel claim, right? It is. So why aren't we just doing an ineffective assistance of counsel analysis? Because that was the job of the state court. And it's the job of this court to evaluate whether the state court's analysis of ineffective assistance of counsel was correct. And at the time that this matter was before the state court, Lucas was good law. Everyone has agreed, district court judge, the magistrate, the government, the state in this case, all agree that at the time that this matter was before the state court under Lucas, he was entitled to this jury instruction and it was per se reversible error. He was- That wasn't at an ineffective assistance of counsel stage though, right? That was at the merit stage and then on direct appeal. No. During the ineffective assistance of counsel claim, which was first filed in 2015 all the way up to 2017, the last ineffective assistance of counsel claim was decided in state court in January of 2019. Knight wasn't decided until December of 2019, 11 months later. And the state even conceded during their argument that had he not filed that successive claim in state court that was ultimately decided in 2019, it wouldn't have held up the district court's decision. Knight wouldn't have happened. We would have been here. We wouldn't be here because the district court would have had to have found in our client's favor. So can I ask you a question? And so obviously I've got some sympathy for this plain language of ADPA argument, but I think that Judge Grant is onto something. There is this weird interaction in this case between the plain language of ADPA, which takes us sort of this time machine thing like back to what the state court was doing at which point in time Knight didn't exist. But Fretwell did pre-exist, right? And so Fretwell does require us to do more than to ask simply whether the outcome of the proceeding would have been different, but to look into fundamental fairness. How would we have measured fundamental fairness for Fretwell purposes pre-Knight, right? That's kind of, it's kind of like, it's like a freaking Christopher Nolan movie or something. It's like hard to figure out like sort of at what point in time we are. What point in time is it 100% deciding factor in this case? And I would submit that it's the point in time that the state court made its decision. However, with regards to the fundamental fairness question, which I think several of you have asked about our position on that, fundamental fairness with respect to this case has to do with the standard of review on appeal. This isn't just some issue that he could have, he failed to make an objection and had he made it, we might've thought it's possible that the court would have ruled in his favor. This is a and per se reversible error. And had it been raised as an issue in his direct appeal, he was guaranteed to win. This isn't a question of he might've won like all of the other cases cited by the state. That's what the crux of the fundamental fairness argument is here. I would just conclude with in Clark v. Crosby, this court held that an appellant's process effects of success at a new trial are not relevant to the examination of prejudice, which would bring it to if Knight were to be applied, it's not relevant under Crosby. And I would ask that the court reverse the district court's decision.